<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MINDEN PICTURES INC.,**<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>**AMMOLAND, INC.,**<br><br>　　　　　　Defendant. | Civil Action No. 20-2276 (GC) (TJB)<br><br>**OPINION** |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon the Motion for Summary Judgment filed by Plaintiff Minden Pictures Inc. ("Plaintiff" or "Minden") and the Cross-Motion for Summary Judgment filed by Defendant Ammoland, Inc. ("Defendant" or "Ammoland"), pursuant to Federal Rule of Civil Procedure 56.

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion for Summary Judgment (ECF No. 32) is **DENIED,** and Defendant's Cross-Motion for Summary Judgment (ECF No. 40) is **GRANTED**.

## I.　　BACKGROUND

This copyright infringement case concerns a photograph that was allegedly displayed on Defendant's website in violation of Plaintiff's exclusive licensing rights.

**A.      STATEMENT OF FACTS[1]**

Minden is a wildlife and nature photograph licensing agency incorporated in California. (Pl. SMF ¶ 1.) To prevent infringement of its work, Plaintiff registers its images through the Copyright Office. (Declaration of Richard L. Minden ("Minden Decl.") ¶ 16, ECF No. 33.) As of 2022, Plaintiff had registered over 100,000 images with the Copyright Office. (*Id.*)

To detect infringements, Plaintiff also engages various technology companies that detect online infringement "by spydering or crawling the internet and help recover some of our lost revenue." (*Id.* ¶ 18.) Specifically, "[s]ince the late 1990s, Minden Pictures has engaged a number of companies to detect infringement, including Digimarc, IP Archive, Image Professionals, PicScout, and, after a brief trial run in 2010, Image Rights International since 2017 to search the internet for infringement of images in our catalogue." (*Id.*)

**a.      Copyright Registration of Photograph**

The photograph at issue in this litigation ("Vezo Photograph") depicts two bald eagles perching on a branch against a snowy background. (Minden Decl., Ex. A, ECF No. 33-1.)

On December 23, 2008, the Vezo Photograph was registered with the United States Copyright Office ("Copyright Office") with Registration Number VA 1-730-676. ("Certification

---

[1] Upon review, the Court notes that neither party complied with Local Civil Rule 56.1(a), which requires that an opponent of summary judgment file "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1(a). Nonetheless, the Court, in the exercise of its broad discretion, does not deny the parties' motions based upon failure to comply with Local Rule 56.1. Rather, the Court derives the facts in this action from each party's Statement of Undisputed Material Facts ("Def. SMF", ECF No. 39; "Pl. SMF", ECF Nos. 44, 46) and the exhibits specifically referenced therein. Any disagreements amongst the parties as to the timing or characterization of certain aspects of the incident in question are noted for clarity where necessary and appropriate.

of Registration", Minden Dec., Ex. B, ECF No. 33-2.) The Certification of Registration lists Tom Vezo as the author and Dorothy Vezo as the copyright claimant by inheritance.[2] (*Id.*) The Vezo Photograph was registered along with various other photographs under the title "Tom Vezo 2003 Photo Collection on Minden Pictures Website". (*Id.*; *see also* Declaration of Oscar Michelen ("Michelen Decl."), Ex. D at 3 (image labeled as "220312.JPG"), ECF No. 37-4.)

      **b.**     **Exclusive Licensing Agency Agreement**

In March 2003, Tom Vezo and Plaintiff entered into a photographer's agency agreement for the licensing of various stock photographs, including the Vezo Photograph. ("Agency Agreement", Minden Decl., Ex. C, ECF No. 33-3.)[3] The Agency Agreement granted Plaintiff exclusive license over the Vezo Photograph (*Id.* ¶ 2.1) and the right to institute litigation on Vezo's behalf (*Id.* ¶ 14). Paragraph 15 of the Agreement sets forth the term and termination, as follows:

> Agreement shall be in effect for five (5) years from the commencement date hereof, and shall be automatically renewed for a like period unless either party notifies the other party in writing of its intention not to renew this Agreement no later than thirty (30) days before the date of renewal.

(*Id.* ¶ 15.) In accordance with these original terms, the Agency Agreement was in effect until March 2013, after a five-year effective period and then an automatically renewed five-year period.

In August 2006, the parties executed a First Amendment to the Agency Agreement. ("First Amendment", Minden Decl., Ex. E, ECF No. 33-5.) The First Amendment also amended the termination date of the Agency Agreement to be the later of "the date of termination stipulated in

---

[2] In 2008, upon the passing of Tom Vezo, Dorothy Vezo was appointed as the personal representative of his estate by an Arizona superior court. (Minden Decl., Ex. D, ECF No. 33-4.)

[3] The Court notes that the Agency Agreement only contains a signature for Vezo dated March 26, 2003. It does not contain a dated signature by a representative of Plaintiff. (*See* ECF No. 33-3 at 9.)

the original Agreement or three (3) years after the date of this First Amendment". (*Id.*) Based on the First Amendment, the Agency Agreement terminated either in March 2013, after the five-year renewal period set forth in the original Agreement, or in August 2009, three years after the First Amendment.

In August 2009, Dorothy Vezo, on behalf of Tom Vezo, and Plaintiff executed a Second Amendment to the Agency Agreement. ("Second Amendment", Minden Decl., Ex. F, ECF No. 33-6.) The Second Amendment amended the term of the Agency Agreement to instead state "the Agreement shall continue in force, without interruption, from the date originally signed until three (3) years after the date of this Second Amendment." (*Id.*) Based upon the Second Amendment, the Agency Agreement terminated in August 2012 (three years after the date of the Second Amendment).

In its opposition brief to Defendant's Motion, Plaintiff produces, for the first time in this litigation, an additional amendment to the Agency Agreement, dated June 23, 2021. ("2021 Amendment", Declaration of R. Terry Parker, Ex. A, ECF No. 43-2.) The 2021 Amendment seeks to "clarify the rights of the Agency under the Agreement." (*Id.* at 1.) For instance, Paragraph 6 of the 2021 Amendment states that:

> Photographer acknowledges, affirms, agrees, represents and warrants that the Agreement remains in force and that, among other things, [Plaintiff] has served, continuously and without interruption, as Photographer's exclusive agent and syndicator of the images, in any and all formats and media, … and has also possessed, continuously and without interruption, all rights necessary to effectuate the same, including but not limited to possessing an exclusive license to reproduce, distribute, publicly display and otherwise exploit the Images, … from the effective date of the original Agreement to the present day, regardless of any other amendments.

(*Id.* at 3.) The 2021 Amendment also amended the term provision of the Agency Agreement as follows:

[T]he Agreement shall further remain in force hereinafter for a term of one (1) year and shall be automatically renewed in perpetuity for periods for one (1) year each thereafter, unless either Photographer or Agency terminates the Agreement with an express written statement of non-renewal delivered to the other party no later than thirty (30) days before the date of said automatic renewal."

(*Id.*)

### c.      Alleged Infringement by Defendant

Defendant is a New Jersey media company that owns and operates the website www.ammoland.com ("Website"). (*See* "Def. Response to Pl. Requests" at Nos. 1, 2, 5, 9, Declaration of R. Terry Parker ("Parker Decl."), Ex. F, ECF No. 34-6.) In 2014, Defendant published an article, "Arizona Governor Brewer Proclaims June 20 American Bald Eagle Day", on its website that contains the same image as in the Vezo Photograph. ("Article", Michelen Decl., Ex. E, ECF No. 37-5.) The only substantive difference between the image in the Article and the Vezo Photograph is the Article image contains the "AMMOLAND" logo in place of the "Tom Vezo / Minden Pictures" watermark. (Compare ECF No. 33-1 against ECF No. 37-5.)

Fred Riehl, Defendant's Editor-in-Chief, testified that Defendant received the image that was placed on the Website in 2014 from the Arizona Game and Fish Commission ("Arizona Commission"). ("Riehl Dep. Tr." at 45:9-13, Parker Decl., Ex. G, 34-7.) Specifically, Riehl testified that the Arizona Commission provided a press release to Defendant with the same contents and image that was eventually published by Defendant in the Article. (*Id.*) During discovery, Defendant produced the press release it received from the Arizona Commission (Michelen Decl., Ex. F, ECF No. 37-6.)[4] Plaintiff contends that Defendant has failed to produce a

---

[4] The Court notes that the Arizona Commission press release produced by Defendant does not contain the at-issue image.

license from the Arizona Commission to use the Vezo Photograph nor does Plaintiff have records of such licensing. (*See* Parker Decl. ¶ 16.)

### d.      Discovery of Infringement by Plaintiff

Plaintiff alleges it discovered that Defendant was using the Vezo Photograph without a license in January 2020. (*See* Minden Decl. ¶ 8.) Defendant alleges that Plaintiff never sent Defendant any notice or letter regarding the alleged infringement prior to filing the Complaint. (*See* Def. SMF ¶ 18; *see also* Riehl Dep. Tr. at 119:10-120:3.)

### B.      PROCEDURAL HISTORY

On March 2, 2020, Plaintiff commenced this action by filing the two-count Complaint against Defendant, asserting copyright infringement pursuant to §§ 106(1) and 501 of the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.* ("Copyright Act") (Count I) and violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202 ("DMCA") (Count II). (ECF No. 1.)

On January 6, 2021, Plaintiff filed a Motion for Default Judgment. (ECF No. 11.) On January 22, 2021, Defendant filed opposition to Plaintiff's Motion and a Cross-Motion to Set Aside Default (ECF Nos. 12-16), which Plaintiff assented to. (ECF No. 18.) Thus, the Court granted Defendant's Cross-Motion. (ECF No. 19.)

Thereafter, Defendant answered on May 7, 2021 (ECF No. 21) and, following a period of discovery, both parties moved for summary judgment. (ECF Nos. 32, 40.) In response to Defendant's Cross-Motion, Plaintiff agreed to voluntarily withdraw its claim under the DMCA (Count II). (Michelen Decl., Ex. G, ECF No. 37-7.)[5] Thus, the parties seek summary judgment in their respective favor on the remaining count for copyright infringement.

---

[5] Because Plaintiff agreed to drop this count, the parties did not address the DMCA claim in their briefing and thus, the Court will not address it here. *See, e.g., Tiger Supplies Inc. v. MAV Assocs. LLC*, No. 20-15566, 2022 U.S. Dist. LEXIS 99435, at *5 n.4 (D.N.J. June 3, 2022).

## II.      JURISDICTION

This Court has subject matter jurisdiction over Plaintiff's copyright infringement claim pursuant to 28 U.S.C. § 1338, which states that federal courts have exclusive jurisdiction over "any civil action arising under any Act of Congress relating to . . . copyrights."

## III.     LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . ., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary

7

judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## IV.    DISCUSSION

### A.    STANDING UNDER THE COPYRIGHT ACT OF 1976

Standing, as a threshold jurisdictional issue, is a constitutional requirement pursuant to Article III. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). As such, a court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit. *See Keene Corp. v. United States*, 508 U.S. 200, 207 (1993).

Standing to sue for copyright infringement is governed by the Copyright Act. 17 U.S.C. § 501. It provides that "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." *Id.* Further, "as the party asserting a copyright infringement claim, [plaintiff] bears the burden of proving standing by demonstrating its ownership of the subject copyright." *Clarity Software, LLC v. Fin. Indep. Grp.*, 51 F. Supp. 3d 577, 587 n.12 (W.D. Pa.

2014) (citing *Feist Publ'ns, Inc, v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991), and *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)).

Defendant's motion for summary judgment challenges Plaintiff's standing to bring this action. Plaintiff did not produce or author the Vezo Photograph. Instead, Plaintiff argues that it owns the exclusive rights to license the copyrights to the Vezo Photograph. (Minden Decl. ¶ 5; ECF No. 32-1 at 9.) Specifically, Plaintiff argues that the Agency Agreement and its amendments give Plaintiff sufficient ownership interest in the Vezo Photograph to grant it standing to bring this infringement suit. (ECF No. 45 at 5-7.) In opposition, Defendant argues that Plaintiff lacks standing to bring its claim as it is not the copyright registrant or the exclusive licensee of the copyright registrant. (ECF No. 42 at 2-4.)

Thus, as a threshold issue, the Court must assess whether Plaintiff had ownership of a valid copyright as of the date the Complaint was filed on March 2, 2020. *See, e.g., Levey v. Brownstone Inv. Grp., LLC*, No. 11-395, 2012 U.S. Dist. LEXIS 12175, at *8 (D.N.J. Feb. 1, 2012).

### a. Ownership of a Valid Copyright

Here, Defendant does not contest that the Agency Agreement and its amendment granted exclusive licensing rights to Plaintiff. (*See* Def. SMF ¶ 3.)[6] Instead, Defendant contends that the agreement granting Plaintiff exclusive license over the Vezo Photograph automatically expired in 2013, and the 2021 Amendment cannot grant retroactive standing because it was executed after

---

[6] Plaintiff's licensing agency agreements, substantially similar to the one at issue here, have been reviewed by the Ninth Circuit in *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1001 (9th Cir. 2015). There, the Ninth Circuit noted that the licensing agreements granted exclusive licenses of the right to authorize, rending Minden a "legal owner" with standing to sue. *DRK Photo v. McGraw-Hill Global Educ. Holdings, LLC*, 870 F.3d 978, 984. The Ninth Circuit highlighted that in the Minden agreements, "the photographers agreed to appoint Minden 'as sole and exclusive agent and representative with respect to the Licensing of any and all uses of [specified photographs].'" *Id.* (quoting *John Wiley & Sons*, 795 F.3d at 1000) (alterations in original).

9

this action was commenced. (ECF No. 42 at 2-3; ECF No. 47 at 1-4.) Thus, Defendant argues, Plaintiff did not own the exclusive licensing rights at the time of the filing of the Complaint. (Reply at 3.)

When interpreting an agreement purporting to assign copyrights, courts look to state contract law. *Stockfood Am., Inc. v. Adagio Teas, Inc.*, 475 F. Supp. 3d 394, 403 (D.N.J. 2020); *see also TD Bank N.A. v. Hill*, 928 F.3d 259, 273-74 (3d Cir. 2019). Where, as here, the parties agreed to a choice-of-law clause, the courts construe the agreement under the contract law of the chosen state. *Stockfood*, 475 F. Supp. 3d at 403; *see also, e.g., TD Bank*, 928 F.3d at 274. The Agency Agreement and its amendments will therefore be interpreted according to California law. (ECF No. 33-3 ¶ 18.8.)

Under California law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. To interpret a contract, the court looks to the "objective intent, as evidenced by the words of the contract rather than the subjective intent of one of the parties." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (Ct. App. 2003).

"The determination of whether a written contract is ambiguous is a question of law for the court." *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995) (citations omitted). "In interpreting an unambiguous contractual provision [courts] are bound to give effect to the plain and ordinary meaning of the language used by the parties." *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 684 (Ct. App. 2000) (citations omitted). Thus, where "contract language is clear and explicit and does not lead to absurd results, [courts] ascertain intent from the written terms and go no further." *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 53 (Ct.

App. 1997) (internal quotations and citations omitted). However, "[i]f the contract is capable of more than one reasonable interpretation, it is ambiguous, and it is the court's task to determine the ultimate construction to be placed on the ambiguous language by applying the standard rules of interpretation in order to give effect to the mutual intention of the parties." *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 798 (Ct. App. 1998). California law also recognizes that "contract interpretation is a question of law for the court that should only be left to a jury if 'the interpretation turns upon the credibility of extrinsic evidence.'" *Oracle Am., Inc. v. Terix Comput. Co.*, No. 13-3385, 2015 U.S. Dist. LEXIS 59495, at *16-17 (N.D. Cal. May 5, 2015) (quoting *Parson v. Brand Dev. Co.*, 62 Cal. 2d 861, 865 (1965)).

Here, Plaintiff argues that "the parties to the Agreement understood and intended the Agreement to be in effect and continually renewed beyond 2013." (ECF No. 45 at 8.) The plain language of the Agency Agreement and its amendments, however, do not support this assertion. First, the original language of Paragraph 15 of the Agency Agreement, dated March 2003, states that: "This Agreement shall be in effect for five (5) years from the commencement date hereof, and shall be *automatically renewed for a like period* unless either party notifies the other party in writing of its intention not to renew this Agreement no later than thirty (30) days before the date of the renewal." (ECF No. 33-3 ¶ 15.1) (emphasis added).

The plain reading of the above text indicates a renewal would occur for only a singular "like period", meaning after a five-year effective period, until March 2008, the agreement would be automatically renewed for another five years, until March 2013. The Court finds that the plain language speaks for itself, is clear on its face, is capable of only one interpretation and is not ambiguous. The language is plain and clear that the Agency Agreement is not to be "continually renewed beyond 2013", as Plaintiff contends. (ECF No. 45 at 8.)

The amendment to Paragraph 15, pursuant to the First Amendment, does not alter this analysis. The First Amendment, dated August 2006, states that "Paragraph 15 shall be amended such that the Agreement shall continue in force without interruption, from the date originally signed until the later of: the date of termination stipulated in the original Agreement or three (3) years after the date of this First Amendment." (ECF No. 33-5.) Here, the plain language indicates that the Agency Agreement shall continue from the date it was originally signed (*i.e.*, March 2003), until the later of either: (1) the date of termination stipulated in the original Agreement (*i.e.*, March 2013), or (2) three years after the First Amendment (*i.e.*, August 2009). Again, the language is plain and clear that the Agency Agreement had a date of termination and a definite duration.

Next, the Court reviews the Second Amendment, dated August 2009, which modifies Paragraph 15 as follows: "Paragraph 15 shall be amended such that the Agreement shall continue in force, without interruption, from the date originally signed until three (3) years after the date of this Second Amendment." (ECF No. 33-6.) The plain language here demonstrates that the Agency Agreement shall continue from the date originally signed (*i.e.*, March 2003) until three years after the date of the Second Amendment (*i.e.*, August 2012). As with the prior amendment, the Second Amendment contains an express durational term.

Taking the Agency Agreement and the first two amendments together, the Court determines that, to the extent the term provision conflicts across the three agreements, the term provision of the Second Amendment controls. "In case of a conflict between a provision of this Second Amendment and a provision of the [Agency] Agreement, or a provision of the First Amendment, the provision of this Second Amendment shall control." (ECF No. 33-6.) Thus, the Court finds that the Agency Agreement was continued from March 2003 until August 2012, or three years after the date of the Second Amendment.

Further, in examining the language of Paragraph 15 of the Agency Agreement, as amended, the Court does not find that its reading necessarily results in an absurdity. *See Hebert v. Rapid Payroll, Inc.*, No. 2-4144, 2005 U.S. Dist. LEXIS 47537, at *15 (C.D. Cal. Feb. 9, 2005) ("California law is clear that a contract is to be interpreted so as not to involve an absurdity.") Here, based on the express durational terms set forth in Paragraph 15 of the agreements, the Court interprets the Agency Agreement, as amended, to not be continuously renewable, contrary to Plaintiff's suggested interpretation. Such would not lead to an absurd or otherwise unreasonable result as the parties could choose to execute subsequent amendments, as they had done in the past. As the "contract language is clear and explicit and does not lead to absurd results, [the Court] ascertain[s] intent from the written terms and go[es] no further." *Shaw*, 58 Cal. App. 4th at 53. Thus, as of the date of filing, March 2020, without any additional amendments to the Agency Agreement modifying or renewing the term provision in Paragraph 15, the Agency Agreement was no longer effective such that it could confer Plaintiff standing.

Finally, the Court turns to the 2021 Amendment that Plaintiff submitted, for the first time, in support of its opposition brief. (*See* ECF No. 43-2.) The 2021 Amendment was meant to "solidify the parties' intent" (ECF No. 45 at 6) and states that Plaintiff has served as the photographer's exclusive agent "from the effective date of the original Agreement to the present day, regardless of any other amendments." (ECF No. 43-22 at 3.) However, the Court notes that the 2021 Amendment was executed *after* the date the Complaint was filed in March 2020. "If a plaintiff lacks standing at the time the action is filed, then such a deficiency cannot be cured retroactively." *Hoffman-La Roche, Inc. v. Teva Pharm. USA*, Nos. 9-5283 and 9-6335, 2011 U.S. Dist. LEXIS 139239, at *5 n.3 (D.N.J. Dec. 2, 2011) (citations omitted.) Further, "[a]llowing a subsequent [amendment] to automatically cure a standing defect would unjustifiably expand the

number of people who are statutorily authorized to sue." *P&G v. Paragon Trade Brands, Inc.*, 917 F. Supp. 305, 310 (D. Del. 1995) (finding that parties must have standing to bring patent infringement claims at the time they are brought). The Court finds instructive a case from the Northern District of California, which addressed a substantially similar issue raised by Plaintiff. *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. 12-4601, 2013 U.S. Dist. LEXIS 67887, at *22-24 (N.D. Cal. May 13, 2013). There, Plaintiff attempted to argue that it had standing because of new copyright assignments it executed after the initiation of that action. *Id.* at *22. Similar to its argument here, Plaintiff argued that the new assignments should "cure any deficiency in the assignment of rights and that such assignments should relate back to the date the complaint was filed." *Id.* The court there rejected Plaintiff's argument, finding that "[i]f Plaintiff lacked standing to sue at the time the case was filed, it cannot now 'cure' this fundamental lack with a later assignment of rights." *Id.* at *27 (citations omitted). The Court finds this reasoning persuasive and as such, determines that the 2021 Amendment does not cure Plaintiff's lack of standing as of the time this action was commenced. Plaintiff may not assert standing to sue in this case based on the amendment to the Agency Agreement executed in June 2021.

Finally, Plaintiff argues that Defendant, as an alleged third-party infringer, lacks standing to challenge the validity of the Agency Agreement and its amendments. (ECF No. 45 at 8.) Such arguments are unavailing. *See, e.g., Minden Pictures, Inc. v. Pearson Educ., Inc.*, 929 F. Supp. 2d 962, 970 (N.D. Cal. 2013) ("Minden's argument that [the infringer] itself lacks standing to challenge the validity of the copyright assignments is easily rejected.") In support of its arguments, Plaintiff cites to *Malibu Media, LLC v. Tsanko*, which held that an alleged third-party infringer did not have standing to challenge assignment of copyrights to Plaintiff pursuant to § 204 of the Copyright Act. No. 12-3899, 2013 U.S. Dist. LEXIS 169186, at *18 (D.N.J. Nov. 30, 2013). The

present case is distinguishable, however, as § 204 only governs the execution of transfers of copyrights between copyright owners and transferees. *See id.* ("[A] third-party infringer cannot use § 204 to dodge a copyright infringement lawsuit"). As such, these decisions do not apply to standing challenges based on § 501(b) as is the case here, where Plaintiff's basis for claiming ownership stems from its exclusive licensing copyrights. *See Pearson Educ.*, 929 F. Supp. 2d at 970.[7]

Accordingly, as Plaintiff has not met its burden of establishing standing to bring this action for copyright infringement on March 2, 2020, the Court grants Defendant's Motion for Summary Judgment.

## V.   **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Cross-Motion for Summary Judgment is GRANTED. An appropriate Order will follow.

Date: **June 30, 2023**

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

---

[7] As the Court grants Defendant's Motion for Summary Judgment based on standing, the Court need not address the parties' remaining arguments in support of their respective motions.

15